OPINION

Robert O'CONNOR, Appellant,

v.

Boyd A. MILLER and Trim–Aire Aviation, Inc., Appellees.

No. 10–01–374–CV.

Court of Appeals of Texas, Waco.

Dec. 17, 2003.

Bruce Perkins, Byrne, Head & Harrison, L.L.P., James V. Sylvester, Attorney At Law, Austin, for Appellant/Relator.

Travis Williamson, Travis Williamson & Associates, Austin, for Appellee/Respondent.

Before Chief Justice GRAY, and Justice BILL VANCE (Former Chief Justice DAVIS not participating).*

## OPINION

BILL VANCE, Justice.

Robert O'Connor complains of a take-nothing judgment rendered against him after a jury trial on claims he made against Boyd Miller and Trim–Aire Aviation, Inc. for breach of contract, deceptive trade practices, fraud, and negligent misrepresentation. O'Connor had purchased six used airplane engines from Trim–Aire, and he alleged that the condition of the engines was misrepresented. O'Connor raises nine issues on appeal:

1. The knowledge of the person who brokered the sale of the six engines about the sale being "as is" cannot be imputed to O'Connor, because that person did not act as O'Connor's agent with O'Connor's best interest in mind.

---

* This case was argued and submitted for decision with former Chief Justice Davis on the panel, but he resigned effective August 4, 2003. *See* TEX.R.APP. P. 41.1(c).

2. Because O'Connor did not know, imputed or otherwise, that the sale was "as is," that alone cannot, as a matter of law, defeat the "producing cause" elements of his claims.

3. The jury's finding that Miller and Trim–Aire did not engage in deceptive trade practices is not supported by the evidence as a matter of law.

4. The jury's finding that Miller and Trim–Aire did not engage in deceptive trade practices is against the great weight and preponderance of the evidence.

5. O'Connor proved his damages as a matter of law.

6. The jury's finding that Miller and Trim–Aire did not breach a contract with O'Connor is not supported by the evidence as a matter of law.

7. The jury's finding that Miller and Trim–Aire did not breach a contract with O'Connor is against the great weight and preponderance of the evidence.

8. The jury's finding that Miller and Trim–Aire did not defraud O'Connor is not supported by the evidence as a matter of law.

9. The jury's finding that Miller and Trim–Aire did not defraud O'Connor is against the great weight and preponderance of the evidence.

We will affirm the judgment.

FACTUAL BACKGROUND

Jack Wall purchased six used airplane engines and had Trim–Aire, Inc., a company owned by Boyd Miller, pick them up. Trim–Aire is an aircraft maintenance company in Mexia which also deals in airplane-engine parts. Trim–Aire was to review, appraise, and sell the engines. The "heart" of this type of engine is composed of six parts which rotate and which have limited lives. The use of these parts is regulated by the Federal Aviation Administration. Once their lives expire, based on the number of rotations expended, their resale value is insignificant. Log books are routinely kept on airplane engines to, in part, keep track of the useful time remaining on these parts. Sellers of engines also create specification sheets ("spec sheets") which are supposed to be based on the information in the log books, although sometimes the information in previous spec sheets is merely carried over to new spec sheets. The spec sheets contain basic information about the life remaining on the time-limited parts. The log books and spec sheets are delivered to each successive owner of an engine. If these written records are not clear or accurate, or the serial number on a part is unreadable or does not match those in the records, the life remaining on that part cannot be determined and it loses resale value.

The condition of some of the time-limited parts can be checked by partially disassembling the engines, examining the parts and their serial numbers, and studying the logs. But other parts are deeply imbedded in the engine, and special tools for disassembly are required which some businesses, like Trim–Aire, do not have. For these imbedded parts, the log books and spec sheets are used to help verify the parts' useful lives. Although it is not uncommon for purchasers to rely solely on spec sheets to determine the life remaining on time-limited parts, this entails a significant risk because the spec sheets may be inaccurate.

Boyd Miller worked out a fee arrangement with Pete Miller (no relation) for Pete to find purchasers for the six engines. But Pete also worked out an arrangement with O'Connor, who owned an FAA-approved machine shop called Gas Turbine Services, for Pete to find airplane engines which O'Connor would purchase. On sale

of the reconditioned parts in the engines, they would split the profits equally. Boyd provided spec sheets for the six engines on Trim–Aire letterhead for Pete and potential purchasers to examine. The information in these spec sheets came primarily from the spec sheets provided to Boyd by the previous owner of the six engines. Boyd also made the log books available for Pete to examine. Pete told O'Connor about the engines at Trim–Aire, and O'Connor sent his employee, David Doig, to examine the engines. Eventually Pete arranged for O'Connor to purchase the six engines for $150,000. O'Connor had no direct dealings with Boyd, who paid Pete $5,000 for his efforts in brokering the sale. Boyd and O'Connor each testified at trial that he did not know at the time of the sale about the other's financial arrangement with Pete; Boyd testified he knew only that Pete had a financial backer. Boyd also testified that he told Pete the information in the spec sheets and log books was unverified, and that the sale was "as is." Pete's testimony confirmed that the sale was "as is." O'Connor testified he relied solely on the spec sheets provided by Trim–Aire, which he thought were accurate, and he did not know that the sale was "as is."

After purchase, O'Connor had the engines completely disassembled in preparation for reconditioning and selling the parts. He discovered that (a) parts which, according to the spec sheets, were supposed to be in certain engines had been substituted with other parts, (b) serial numbers on some parts were unreadable, and (c) information in the spec sheets did not always match information in the log books. Ultimately, O'Connor sold the useable parts from the six engines for over $280,000. But he determined that nine parts could not be used, and he demanded that Boyd pay him approximately $62,000, an amount O'Connor claimed he could have sold those parts for if they had been as represented. This occurred about one year after O'Connor bought the engines. Boyd offered to examine the log books to help resolve the complaints. He testified at trial that the log books O'Connor sent him had been altered from what he provided O'Connor at the time of the sale. Boyd also offered to buy the engines back, but apparently it was impractical to reassemble them. O'Connor eventually filed suit against Boyd and Trim–Aire for breach of contract, violations of the Texas Deceptive Trade Practices Act (DTPA), fraud, and negligent misrepresentation. A jury found against O'Connor on all claims, and the court rendered a take-nothing judgment.

## OUR REVIEW

We will first address O'Connor's six sufficiency-of-the-evidence issues (3–4, 6–7, & 8–9) on the jury's failure to find a breach of contract, violations of the DTPA, or fraud. We will then review the "as is" provision of the agreement as it applies to the first six issues. Finally, we will address the fifth issue on damages only if O'Connor prevails on other issues that would entitle him to damages.

## STANDARDS OF REVIEW FOR SUFFICIENCY OF THE EVIDENCE

Six of O'Connor's nine issues concern challenges to the legal and factual sufficiency of the evidence. We will use the following standards to review these issues.

### Legal Insufficiency

When a party who had the burden of proof brings a "legal insufficiency" issue complaining of an adverse finding, that party must demonstrate that the evidence establishes conclusively, *i.e.*, as a matter of law, all vital facts in support of the finding sought by the party. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). We

first examine the record for evidence supporting the adverse finding, ignoring all evidence to the contrary. *Id.* If more than a scintilla of evidence supports the adverse finding, our inquiry ends; but if no evidence supports the adverse finding, we review the entire record to determine if the contrary proposition is established as a matter of law. *Id.*

### Factual Insufficiency

■■■ When a party who had the burden of proof complains of the factual insufficiency of an adverse finding, it must demonstrate that the adverse finding is contrary to the great weight and preponderance of the evidence. *Dow Chemical,* 46 S.W.3d at 242; *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 651–53 (Tex.1988). We weigh all the evidence and set aside the adverse finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chemical,* 46 S.W.3d at 242. In doing so, we must detail the evidence and state in what regard the contrary evidence greatly outweighs the evidence in support of the adverse finding. *Id.* We must also remember that it is within the province of the jury to determine the credibility of the witnesses and the weight to be given their testimony. *Brush v. Reata Oil & Gas Corp.,* 984 S.W.2d 720, 725–26 (Tex. App.-Waco 1998, pet. denied). The trier of fact may believe one witness and disbelieve another. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex.1986). It may resolve inconsistencies in the testimony of a witness, and it may accept lay testimony over that of experts. *Id.* We may not pass upon a witness's credibility or substitute our judgment for that of the jury, even if the evidence might clearly support a different result. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex.1998) (citing *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex. 1986)).

### Sufficiency Measured Against the Jury Charge

■■■ When we review for sufficiency of the evidence, "it is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the [complaining] party fails to object to the charge." *Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex.2000). None of the parties objected to the charge at trial as it applies to the issues on appeal. TEX.R. CIV. P. 274. Nor has any party complained on appeal about the jury charge.

ISSUES 6 AND 7: BREACH OF CONTRACT

O'Connor complains of the sufficiency of the evidence concerning the jury's adverse finding about his breach-of-contract claim.

The first question in the charge was this threshold question:

> Did [Boyd and/or Trim–Aire] agree to sell the six airplane engines to Robert O'Connor and/or his agents with the specific engine parts as set out in the engine specification sheets provided by [Boyd and/or Trim–Aire] to Robert O'Connor and/or his agents.

There were five instructions and definitions with the question:

> In deciding whether the parties reached this agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.
>
> In addition, you may consider whether the agreement to sell the six airplane engines to Robert O'Connor and/or his agents was an 'as is' sale. By agreeing to purchase something 'as is,' a buyer agrees to make his own ap-

praisal of the bargain and to accept the risk that he may be wrong.

A party's conduct includes the conduct of another who acts with the party's authority or apparent authority.

Authority for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party. If a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual, and necessary to perform the act expressly authorized.

Apparent authority exists if a party (1) knowingly permits another to hold himself out as having authority, (2) through lack of ordinary care bestows on another apparent existence of authority to his detriment. Only the acts of the party sought to be charged with responsibility for the conduct of another may be considered in determining whether apparent authority exists.

The jury answered "no" to the question as to both Boyd and Trim–Aire.

Part of O'Connor's argument on appeal is that, although there is evidence that Pete was his agent, because Pete's duty as his agent was compromised by Pete's agreement with Boyd to sell the engines for a fee, then the usual rule of agency law—which is that what Pete knew, such as that the sale was "as is," is imputed to O'Connor, who is the principal—does not apply. But the jury was not instructed, and there were no definitions, about these matters of agency law. As noted, O'Connor does not complain on appeal about the charge. The charge submitted, however, does contain definitions and instructions which inform the jury that the conduct of one person (such as entering into an "as is" agreement) who is authorized to act for another may be imputed to that other

person. We will review these sufficiency issues according to the charge as given. *Osterberg,* 12 S.W.3d at 55.

O'Connor also argues that the "as is" agreement is not enforceable because he was defrauded into agreeing to it by misrepresentations that the spec sheets were accurate. Again, the record does not show that he objected to inclusion of the "as is" instruction in the charge, and so we will review these issues according to the charge as given. *Id.*

Finally, O'Connor discusses the Texas Uniform Commercial Code (U.C.C.) and its sections on warranties. But a violation of the U.C.C. or of warranties was never pled, nor tried by consent, and there was no mention of the U.C.C. or warranties in the jury charge. O'Connor cannot raise these matters on appeal for the first time. The charge as given will govern our review. *Id.*

### Legal Insufficiency

■ Under the instructions included with question one, if the jury found that Pete was acting on O'Connor's behalf and under his authority, and that the agreement between Pete and Boyd was for the sale to be "as is," then the jury had a basis for making a finding adverse to O'Connor. Ignoring all evidence to the contrary of the adverse finding, there was trial testimony that (a) O'Connor engaged Pete, for a share of the profits on resale, to broker a purchase of airplane engines from Boyd and Trim–Aire, (b) O'Connor never had any direct dealings with Boyd or Trim–Aire, and (c) the sale was "as is." Thus, we find more than a scintilla of evidence to support a conclusion that Pete was acting under O'Connor's authority and on his behalf, and O'Connor purchased the engines without an agreement regarding the specific engine parts in the spec sheets. *See Dow Chemical,* 46 S.W.3d at 241.

We overrule issue six.

### Factual Insufficiency

In a factual-sufficiency review, we consider all the evidence. Additional testimony came from Boyd, who said that he did not do a thorough review of the log books, there was information in the spec sheets which had not been verified by a complete disassembly of the engines, and he told Pete the log books and spec sheets were unverified. Another witness was Trim–Aire's chief mechanic, Dennis McCoslin, who also testified that he told Pete the records were in bad shape. In addition, O'Connor's mechanic, Robert Doig, testified he visually inspected the engines with Pete. Thus, they could see that the engines were not fully disassembled, making inspection of all the parts impossible. Doig also testified he would have preferred to have made a closer examination of the log books, but he did not tell O'Connor that. Pete testified that he did not remember discussing the accuracy of the spec sheets with Boyd, he did not study the log books closely, he relied on the spec sheets as "the Bible," and he thought the information in them came from the logs. He admitted the sale was "as is" and said he did not believe Boyd had lied to him about anything.

O'Connor testified that neither Pete nor anyone else told him the sale was "as is." He also testified that Pete had been his agent in other transactions, but because of Pete's financial arrangement with Boyd regarding the engines, he questioned the extent to which Pete was acting solely as his agent in this transaction. But O'Connor confirmed that he never dealt directly with Boyd or Trim–Aire, only through Pete, and it is uncontroverted that Pete brokered the deal with Boyd for O'Connor's benefit. In fact, the sales invoice was in Pete's name, although O'Connor wired the $150,000 to Boyd.

Although O'Connor claims he relied totally on the spec sheets and did not know the sale was "as is," there was testimony from numerous witnesses that (1) the engines had not been completely disassembled, and so all the parts had not been visually inspected, (2) the information in the log books and spec sheets—which were made available to Pete and Doig for inspection—had not been completely verified, (3) there were discrepancies on the face of some of the spec sheets, (4) Pete, who was acting on O'Connor's behalf, knew or had been informed of these matters, and (5) the agreement between Boyd and Pete was that the sale was "as is."

Weighing all the evidence and remembering that the jury determines the credibility of the witnesses and the weight of the testimony, we do not believe the jury's failure to find that the parties agreed that the engine parts would specifically match with the information in the spec sheets is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*; *Maritime Overseas*, 971 S.W.2d at 407.

We overrule issue seven.

### ISSUES 3 AND 4: DTPA VIOLATIONS

O'Connor next complains of the sufficiency of the evidence concerning the jury's adverse finding on his DTPA claim.

Question four, answered "no" by the jury, asked:

> Did [Boyd and/or Trim–Aire] engage in any false, misleading, or deceptive act or practice that Robert O'Connor relied on to his detriment and that was a producing cause of damages to Robert O'Connor?

Producing cause was defined as:

> an efficient, exciting, or contributing cause that, in a natural sequence, produced the damages, if any. There

may be more than one producing cause.

The following instruction was given regarding types of false, misleading, or deceptive acts or practices:

Representing that goods had or would have characteristics that they did not have.

Representing that goods were or would be of a particular standard, quality, or grade, or that goods were of a particular style or model, if they were of another.

Failing to disclose information about goods that was known at the time of the transaction with the intention to induce Robert O'Connor into a transaction he otherwise would not have entered into if the information had been disclosed.

On appeal, O'Connor asserts legal and factual sufficiency issues about the two "representation" violations but not of the "failing to disclose" violation.[1] He focuses on the fact that the information Boyd provided in the spec sheets was incorrect, *i.e.,* false, misleading, and deceptive, and that as a result he was damaged, because he would not have bought the engines for the price he paid if he had known the full truth.

O'Connor broadly asserts that under the evidence the answer to Question 4 should have been "yes." We point out that we do not know the basis for the jury's answer, *i.e.,* on which element or elements it felt O'Connor's proof failed. *See Dealers Elec. Supply v. Pierce,* 824 S.W.2d 294, 294 (Tex.App.-Waco 1992, writ denied).

Our analysis begins with the element of reliance—whether O'Connor successfully proved that he relied on the information in the spec sheets to make his decision to buy the engines for the price he paid. If he did not, our inquiry will end.

### Legal Insufficiency

■ Reviewing only the evidence which supports a finding that O'Connor did not rely on the spec sheets, we find that two of the spec sheets showed that parts with identical serial numbers were contained in two separate engines. From such an obvious discrepancy on the face of the spec sheets a jury could find that, if he had relied on the spec sheets, O'Connor would have read them, found the discrepancy, and asked for clarification before making his decision to purchase the engines for the price he paid. No evidence shows that he did. Thus, we find more than a scintilla of evidence on which the jury could find that O'Connor did not rely on the information in the spec sheets. *Dow Chemical,* 46 S.W.3d at 241.

We overrule issue three.

### Factual Insufficiency

■ Still focusing on the element of reliance, we review all the evidence about the information in the spec sheets. In addition to the inference derived from the discrepancies on the face of the spec sheets, Trim–Aire's expert testified that it is known in the industry that relying solely on spec sheets is risky and that the price of an engine would be higher if sellers had to give a warranty that all the information in the spec sheets is correct. Also, several witnesses testified that the condition and authenticity of some of the parts cannot be verified without totally disassembling the engines, which everyone involved knew did not happen. For example, O'Connor's mechanic, Doig, and Pete together observed the partially disassembled engines on one occasion. Finally, the only documentary evidence of the terms of the sale was a

---

1. He does not complain about the jury's refusal, in question eight, to find that Boyd and/or Trim–Aire engaged in any unconscionable action or course of action, a DTPA claim.

two-page invoice which did not incorporate the spec sheets.

O'Connor's argument appears to assume that the jury was bound to believe his naked assertion that he believed and relied on the information in the spec sheets. But there is other evidence from which a jury could make a determination. And, it is within the province of the jury to determine the credibility of the witnesses and the weight to be given their testimony. *Brush*, 984 S.W.2d at 725–26. The trier of fact may believe one witness and disbelieve another, and may resolve inconsistencies in the testimony of a witness. *McGalliard*, 722 S.W.2d at 697. We may not pass upon a witness's credibility or substitute our judgment for that of the jury, even if the evidence might clearly support a different result. *Maritime Overseas*, 971 S.W.2d at 407. Considering all the evidence, we find that the jury could have reasonably determined that O'Connor did not rely on the information in the spec sheets. Thus, the refusal to find a DTPA violation is not so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.; Dow Chemical*, 46 S.W.3d at 242.

Based on this determination, we do not reach O'Connor's arguments about other elements of his DTPA claim. We overrule issue four.

ISSUES 8 AND 9: FRAUD

O'Connor also broadly complains of the sufficiency of the evidence concerning the jury's failure to find fraud.

Question ten of the charge, answered "no" by the jury, asked:

> Did [Boyd and/or Trim–Aire] commit fraud against Robert O'Connor?

Fraud occurs when:

(a) A party makes a material misrepresentation,

(b) The misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,

(c) The misrepresentation is made with the intention that it should be acted on by the other party, and

(d) The other party acts in reliance on the misrepresentation and thereby suffers injury.

"Misrepresentation" means:

(a) A false statement of fact, or

(b) A statement of opinion based on a false statement of fact.

Again, we will focus on a single element. If, under "c," Boyd and Trim–Aire did not intend for O'Connor to rely on the spec sheets, the claim fails.[2] If O'Connor cannot sustain his sufficiency claims on that element, his issues fail.

Evidence of "intent" is usually not susceptible of direct proof. *Batto v. Gafford*, 119 S.W.3d 346, 347 (Tex.App.-Waco, 2003, no pet. h.). But circumstantial evidence may be used to establish any material fact. *See Lozano v. Lozano*, 52 S.W.3d 141, 149 (Tex.2001). The material fact must be reasonably inferred from the known circumstances. *Id.; Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059, 1064 (1898) (inference is merely a deduction from proven facts). "By its very nature, circumstantial evidence often involves linking what may be apparently insignificant and unrelated events to establish a pattern." *Lozano*, 52 S.W.3d at 149 (quoting *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex.1993)). Thus, each piece of circumstantial evidence must be viewed not in isolation, but in light of all the known circumstances. *Id.; Brinegar*

2. In issues three and four, we focused on the element of "reliance." Much of what we said there would also apply to the discussion of the jury's failure to find fraud.

*v. Porterfield,* 705 S.W.2d 236, 238–39 (Tex.App.-Texarkana 1986), *aff'd,* 719 S.W.2d 558 (Tex.1986); *State Farm Fire & Cas. Ins. Co. v. Vandiver,* 970 S.W.2d 731, 736 (Tex.App.-Waco 1998, no pet.). Circumstantial evidence often requires a factfinder to choose among opposing reasonable inferences. *Lozano,* 52 S.W.3d at 148; *see e.g., Farley v. M M Cattle Co.,* 529 S.W.2d 751, 757 (Tex.1975). And, this choice in turn may be influenced by the factfinder's views on credibility. *Lozano,* 52 S.W.3d at 148–49. Thus, a jury is entitled to consider the circumstantial evidence, weigh witnesses' credibility, and make reasonable inferences from the evidence it chooses to believe. *Id.* at 149; *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 797 (1951).

### *Legal Insufficiency*

 Boyd testified that, although he provided the spec sheets and log books to Pete for review, he also warned Pete they were not verified. Considering only the evidence that supports a finding that Boyd did not intend for anyone to rely on the spec sheets, Pete's direct testimony is more than a scintilla of evidence and therefore is legally sufficient to support the jury's failure to find fraud. *Dow Chemical,* 46 S.W.3d at 241.

We overrule issue eight.

### *Factual Insufficiency*

 Reviewing all the evidence that bears on the element of intent, we find that Boyd made the spec sheets, log books, and partially disassembled engines available to Pete and Doig for inspection, and Pete and Doig could have learned about many of the discrepancies in the records before purchase. In addition, although O'Connor denied knowing about it, Boyd testified, as did McCoslin, that he told Pete the records were not verified, *i.e.,* the records' reliability was in question. Furthermore, Boyd offered to redress O'Con-nor's complaints by buying the engines back.

The jury could have inferred from this evidence that O'Connor failed to prove Boyd and Trim–Aire intended that he rely on the spec sheets. Again, we note that the jury determines the credibility of the witnesses and the weight of their testimony. We do not find the adverse finding on the fraud question to be so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.; Maritime Overseas,* 971 S.W.2d at 407.

We overrule issue nine.

### ISSUES ONE AND TWO: "AS IS"

Both parties have devoted considerable discussion to the enforceablility and effect of the "as is" provision of the agreement. But we review issues involving an unobjected-to charge under that charge. *Osterberg,* 12 S.W.3d at 55. Under this charge, the "as is" provision is applicable only to question one about the breach-of-contract claim, where it has a specific definition. We have already discussed how the "as is" provision applies to that claim. As for the fraud and DTPA claims, the jury was not instructed to consider the "as is" provision. However, we have found the jury's failure to find on those two claims to be supported by the evidence, without considering elements to which the evidence about "as is" would apply. For these reasons, we overrule issues one and two.

### ISSUE FIVE: DAMAGES

Because we overrule O'Connor's complaints as to all claims, he is not entitled to damages. We overrule issue five.

### CONCLUSION

Having overruled all of O'Connor's issues, we affirm the judgment.