

# IN THE
## TENTH COURT OF APPEALS

Nos. 10-11-00148-CV, 10-11-00149-CV, 10-11-00150-CV,
10-11-151-CV, 10-11-00152-CV, 10-11-00153-CV,
10-11-00154-CV, and 10-11-00313-CV

**JUDITH HOCE HOLMES,**

                                              Appellant

 v.

**SHIRLEY AL JAAFREH,**

                                              Appellee

**From the County Court at Law
Walker County, Texas
Trial Court Nos. 10499CV, 10500CV, 10501CV,
10517CV, 10518CV, 10519CV, 10520CV, and 10537CV**

## MEMORANDUM OPINION

On February 7, 2011, Appellant Judith Hoce Holmes filed three sworn complaints in justice court against Appellee Shirley Al Jaafreh, her then-landlord, seeking writs of restoration under Property Code section 92.0091 and statutory damages of $500 in each case for utility interruption under Property Code section 92.008. A week later, on February 14, Holmes filed four more similar complaints. After the justice court

denied relief in each case, Holmes appealed all seven cases to the county court, where a trial de novo occurred with Holmes proceeding pro se (as she is in these appeals). The county court denied relief in each case, and Holmes appeals all seven cases.

In an eighth case filed on March 4 in justice court, Holmes sued Al Jaafreh for landlord retaliation under Property Code section 92.331. The justice court denied relief, and Holmes appealed to the county court, which denied relief after a trial de novo. Holmes also appeals that case.

### Utility Interruption

In each of the first seven appeals, Holmes asserts two identical issues: (1) the trial court improperly consolidated and heard all seven cases together; and (2) the evidence is legally and factually insufficient to support the trial court's judgment.

#### *Consolidation*

Holmes's first issue in these seven cases asserts that hearing all seven cases together caused her confusion and prevented her from fully developing and presenting each case. The trial court heard the cases over two consecutive days in a bench trial. On the first day, the trial court heard Holmes's case-in-chief on her first three cases. Only Holmes testified on the first day because Al Jaafreh was not present (though her attorney was present). On the second day, Al Jaafreh testified in defense of the first three cases, and then Holmes presented her other four cases.

At no time during the two days of trial did Holmes object to the trial court's hearing all seven cases together. In fact, at the beginning of trial, the trial court asked Holmes if the first three cases were all related, and Holmes replied: "They're all related

--  …  Different facts on different -- but they're all restoration of utilities."  The trial court then said: "Okay, all right.  Well, try to cover all three; okay?"  Holmes replied: "Well I need to talk about each of them individually, and I have put a copy of the Texas Property Code, Chapter 92."

Furthermore, on the second day of trial, Al Jaafreh asked to have the exhibits that had been admitted in the first three cases admitted in the four other cases, and Holmes agreed to that.  Holmes thus cannot complain on appeal about all seven cases being heard together.  *See Boufaissal v. Boufaissal,* 251 S.W.3d 160, 162 (Tex. App.—Dallas 2008, no pet.) ("a party will not be allowed to complain on appeal of an action or ruling which she invited or induced").  And by not objecting in the trial court, Holmes failed to preserve her complaint for appellate review.  *See* TEX. R. APP. P. 33.1(a); *Hudson v. Comm'n for Lawyer Discipline,* No. 05-07-00775-CV, 2009 WL 225386, at *1 (Tex. App.—Dallas Feb. 2, 2009, pet. denied) (mem. op.) (holding party failed to preserve complaint about consolidation by never objecting in trial court); *Thomas v. Parker,* No. 14-97-00835-CV, 2000 WL 280293, at *3 (Tex. App.—Houston [14th Dist.] Mar. 16, 2000, no pet.) (not designated for publication) ("Appellant has waived this complaint by failing to object at trial to the consolidation.").  We overrule issue one in the first seven appeals.

### Sufficiency of the Evidence

In her second issue in the first seven appeals, Holmes asserts that the evidence is legally and factually insufficient to support the judgment.  Holmes, as the plaintiff, had the burden of proof.  When the party that had the burden of proof at trial complains of the legal insufficiency of an adverse finding, that party must demonstrate that the

evidence establishes conclusively, *i.e.*, as a matter of law, all vital facts in support of the finding sought. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In reviewing the adverse findings for the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the prevailing party, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 808 (Tex. 2005). Thus, because this was a bench trial, we must credit favorable evidence for Al Jaafreh if a reasonable factfinder could, and disregard evidence contrary to the factfinder's findings. Moreover, we must not substitute our opinion on witness credibility for that of the factfinder. *See id.* at 816-17.

When the party complaining of the factual sufficiency of the evidence had the burden of proof at trial, it must demonstrate that the adverse finding is contrary to the great weight and preponderance of the evidence. *Francis*, 46 S.W.3d at 242. We weigh all the evidence, and we can set aside the adverse finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* In doing so, we must detail the evidence and state in what regard the contrary evidence greatly outweighs the evidence in support of the adverse finding. *Id.*

> We must also remember that it is within the province of the jury to determine the credibility of the witnesses and the weight to be given their testimony. *Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 725-26 (Tex. App.—Waco 1998, pet. denied). The trier of fact may believe one witness and disbelieve another. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). It may resolve inconsistencies in the testimony of a witness, and it may accept lay testimony over that of experts. *Id.* We may not pass upon a witness's credibility or substitute our judgment for that of the jury, even if the evidence might clearly support a different result. *Maritime Overseas*

*Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex. 1998) (citing *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex. 1986)).

*O'Connor v. Wilson,* 127 S.W.3d 249, 254 (Tex. App.—Waco 2003, pet. denied).

Section 92.008 of the Property Code provides in pertinent part:

> (b) A landlord may not interrupt or cause the interruption of water, wastewater, gas, or electric service furnished to a tenant by the landlord as an incident of the tenancy or by other agreement unless the interruption results from bona fide repairs, construction, or an emergency.
>
> …
>
> (f) If a landlord or a landlord's agent violates this section, the tenant may:
>
> > (1) either recover possession of the premises or terminate the lease; and
> >
> > (2) recover from the landlord an amount equal to the sum of the tenant's actual damages, one month's rent or $500, whichever is greater, reasonable attorney's fees, and court costs, less any delinquent rents or other sums for which the tenant is liable to the landlord.

TEX. PROP. CODE ANN. § 92.008 (West Supp. 2012).

Al Jaafreh acquired the property at issue, a mobile-home park, in 2010. It consists of seven mobile homes, but only four were occupied. Holmes had rented and lived in one of the mobile homes since 2005. Her original lease had been with the prior owner and had expired, so at the time of the events in question, Holmes had a month-to-month tenancy. Utilities were included in Holmes's rent, and Al Jaafreh was responsible for providing the utilities.

Holmes received a letter dated January 21, 2011 from Al Jaafreh's attorney on January 25; it stated that Al Jaafreh would not be renewing Holmes's lease and

demanded that Holmes vacate the mobile home by March 10 unless Holmes executed a new lease. The letter notified Holmes that she was in breach of the current lease by possessing nine dogs because her lease allowed only one dog. The letter also notified Holmes that she was in breach by not paying the utilities and requested that Holmes arrange the transfer of the utilities into Holmes's name. Al Jaafreh wanted Holmes to pay her own utilities under the new lease.

Three of Holmes's suits concern water, three concern electricity, and one concerns propane. We will therefore address these seven cases by utility.

### Water

The three suits concerning water are Nos. 10-11-00148-CV, 10-11-00153-CV, and 10-11-00154-CV. In No. 10-11-00148-CV, which was originally filed in the justice court on February 7, 2011, Holmes alleged that she had had no water since February 2, a Wednesday. Holmes testified that the water pipes under her mobile home froze and burst overnight because of sub-freezing weather. She said that the temperature was "in the twenties" and, with the wind chill, "down to the teens and down to zero, near zero." Holmes said that her pipes had never frozen before and that the previous summer, Al Jaafreh and David Ramirez, who was Al Jaafreh's handyman at the mobile-home park, were installing water meters on the mobile homes and took off the insulation that had been on the pipes and did not replace it. Holmes therefore blamed Al Jaafreh and Ramirez for causing the pipes to freeze by their failure to replace the insulation.

Because of her ongoing lease dispute with Al Jaafreh, Holmes called her attorney

about the frozen pipes, instead of calling Al Jaafreh, and Holmes's attorney notified Al Jaafreh's attorney. On the evening of February 2, someone left three water bottles on Holmes's porch, but according to Holmes, nobody came to Holmes's mobile home until late Friday afternoon, February 4, when Ramirez showed up. Holmes admitted that, as of Friday February 11, she had water but said it had not been properly fixed. She also admitted that she had water on February 15, when the justice court heard her case.

Al Jaafreh testified that she was out of town on February 2 when she got a call that Holmes's pipes had busted. She returned on Saturday, February 5, and "was out there every day." Holmes disputed that Al Jaafreh was there at all over the weekend. Al Jaafreh said that she never stopped trying to restore or repair Holmes's services: "even when I didn't have help from my electrician, and my helper, I still went out there in the rain and the cold, and I was digging in the mud and everything myself." Holmes's mobile home had many busted pipes, and Al Jaafreh said that she had trouble findings parts and fittings; the stores had run out of supplies because "everybody's pipes busted" during the hard freeze.

In a letter ruling, the trial court concluded that there is no evidence that Al Jaafreh caused an interruption in Holmes's utility and that the causes of the interruption were the emergency and Al Jaafreh's bona fide repairs. The trial court thus entered a take-nothing judgment.

Having reviewed all the evidence in the light most favorable to Al Jaafreh as the prevailing party, and considering that the trial court as factfinder determines witness credibility, we hold that the evidence is legally sufficient to support the trial court's

adverse finding and that the evidence does not establish conclusively that Holmes is entitled to recover on her claim. And weighing all the evidence on Holmes's factual insufficiency complaint, and considering that it was within the province of the trial court as factfinder to determine the credibility of the witnesses and the weight to be given their testimony, we hold that the trial court's adverse finding is not against the great weight and preponderance of the evidence. We overrule issue two in No. 10-11-00148-CV and affirm the trial court's judgment in that case.

In No. 10-11-00154-CV, which was originally filed in the justice court on February 14, 2011, Holmes alleged that she was without potable water on February 12. In No. 10-11-00153-CV, which was also originally filed in the justice court on February 14, Holmes alleged that she was still without water (potable or otherwise) on February 13. We will address these two cases together.

Holmes testified that the water had been restored on February 11. She made and drank some coffee (which she said later made her sick), and when she then tried to run water in the kitchen sink to do dishes, the water was only trickling. She therefore filled her dish pans with water from the bathroom sink and noticed that there was debris in the water. She soon heard leaking under her kitchen sink and found a leaking pipe that she thought was going to burst, so she turned off the outside main water valve to prevent flooding inside if the pipe burst. Holmes said that when she needed water, she turned on the main valve, did whatever she needed the water for, and then turned the main valve off again.

Holmes called Al Jaafreh to tell her about the leaking pipe under the sink and

having to turn off the water to prevent possible flooding. Al Jaafreh, who was out of state, instructed Holmes to call Ramirez, but Holmes refused to do so. Al Jaafreh eventually left a message with Ramirez about Holmes's water problem, and Ramirez repaired the water the following week on or about February 16. Al Jaafreh said that, if Holmes had left the water on, her mobile home would not have flooded because the pipe at issue was going underneath the mobile home and would have flooded outside.

Like the first water case, the trial court concluded that there is no evidence that Al Jaafreh caused an interruption in Holmes's water utility in these two cases and entered take-nothing judgments. Applying the same standards of review as we did in the first water case, we hold that the evidence is legally sufficient to support the trial court's adverse finding and that the evidence does not establish conclusively that Holmes is entitled to recover on her claims. We also hold that the trial court's adverse finding is not against the great weight and preponderance of the evidence. We overrule issue two in No. 10-11-00153-CV and in No. 10-11-00154-CV and affirm the trial court's judgments in those cases.

### *Propane*

In No. 10-11-00149-CV, which was originally filed in the justice court on February 7, 2011, Holmes alleged that she had been without propane since January 26, 2011. Holmes testified that she had written a December 17 letter to Al Jaafreh letting her know that the propane tank gauge was at zero, and that on January 26, she actually ran out of propane. Holmes had three propane appliances: a central furnace, a cooking stove, and a water heater. On cross-examination, Holmes admitted that she used

electric space heaters for heat, rather than the central furnace that used propane; she never used the central furnace but said it would have been nice to use it during the cold spell that froze the pipes. She also said that she used her cooking stove as supplemental heat.

Al Jaafreh testified that she had been converting all of the mobile homes to electric after acquiring the mobile-home park but that Holmes had been refusing to let her mobile home be converted. Around the time of the freeze, Al Jaafreh had begun steps to convert Holmes's mobile home from propane to electric with an electric water heater and an electric stove. Thus, Al Jaafreh said that, rather than refilling Holmes's propane tank, she was replacing Holmes's propane appliances with electric appliances. The first electric stove did not work, but Al Jaafreh said that Holmes agreed that she would use her electric hot plate until a working electric stove could be put in.

The trial court concluded that there is no evidence that Al Jaafreh caused an interruption in Holmes's utility and that one of the causes of the interruption was Al Jaafreh's bona fide repairs. The trial court thus entered a take-nothing judgment. Applying the same standards of review as we did in the water cases, we hold that the evidence is legally sufficient to support the trial court's adverse finding and that the evidence does not establish conclusively that Holmes is entitled to recover on her claim. We also hold that the trial court's adverse finding is not against the great weight and preponderance of the evidence. We overrule issue two in No. 10-11-00149-CV and affirm the trial court's judgment in that case.

***Electricity***

The three suits concerning electricity are Nos. 10-11-00150-CV, 10-11-00151-CV, and 10-11-00152-CV.  In No. 10-11-00150-CV, which was originally filed in the justice court on February 7, 2011, Holmes alleged that her electricity meter was removed on February 3 due to an electrical fire under her mobile home and that she was without electricity.

Holmes testified that on February 3 (the day after her pipes had froze), there was an electrical fire under her mobile home and that she turned her power off.  The fire department was called, and they told Holmes that the electricity line to her mobile home had "arced."  The electric company then came, and they took Holmes's electric meter and told her that the electric pole and the breaker box on the pole needed to be replaced.  The next day, Holmes called Al Jaafreh's attorney about the electricity.  Ramirez showed up on February 4, as related above, to begin to address the electric issue and Holmes's busted pipes.  The pole and outside breaker box were replaced the next week, and Holmes's electricity was restored on February 11.  Holmes filed her first case about the electricity on Monday, February 7 because it had not yet been restored.

In the same letter ruling referenced above, the trial court concluded that there is no evidence that Al Jaafreh caused an interruption in Holmes's utility and that the causes of the interruption were the emergency and Al Jaafreh's bona fide repairs.  The trial court thus entered a take-nothing judgment.  Applying the same standards of review as we did above, we hold that the evidence is legally sufficient to support the trial court's adverse finding and that the evidence does not establish conclusively that

Holmes is entitled to recover on her claim. We also hold that the trial court's adverse finding is not against the great weight and preponderance of the evidence. We overrule issue two in No. 10-11-00150-CV and affirm the trial court's judgment in that case.

In No. 10-11-00151-CV, which was originally filed in the justice court on February 14, Holmes alleged that she was without electricity on February 12 because she had to turn off the power to her home on February 11, after it had been restored that day, because of a burning smell. In No. 10-11-00152-CV, which was also originally filed in the justice court on February 14, Holmes alleged that she was still without electricity on February 13. We will address these two cases together.

Holmes testified that on February 11, when the power was turned on, there was a burning smell, and she had Ramirez turn off the power. He checked the breaker box and found a bad breaker, and after fixing it, he turned back on the power. Al Jaafreh said that she and Ramirez were in and around Holmes's mobile home that day for four hours fixing her broken pipes. While they were there, the electricity was on and she and Ramirez checked the breaker box and Al Jaafreh did not smell any burning.

Holmes said that later that day, when she turned on a ceiling light, there was a burning smell again, so she turned off the power and called Al Jaafreh and her attorney. Holmes had an electrician look at her mobile home, and he recommended that the interior breaker box be replaced and said that the current breaker box should not be turned on. Because of this advice that turning on the electricity would be dangerous, Holmes refused to allow Al Jaafreh and Ramirez into her mobile home on four different occasions to inspect the breaker box or to test the electricity without first replacing the

breaker box. Holmes also said that she would not allow Ramirez in to work on the breaker box because she believed that he had improperly wired the electricity in the breaker box. Al Jaafreh confirmed that Holmes would not allow her and Ramirez in to inspect Holmes's breaker box, and she testified that she was willing to repair it after she and Ramirez inspected it. Al Jaafreh said that Ramirez is licensed for air conditioning, heating, and refrigeration and that he handles all of her maintenance at the mobile home park, including electrical.

Although there was electricity running to Holmes's mobile home beginning on February 11, as of the time of trial in April, Holmes had elected to have the power off inside of her mobile home because Al Jaafreh would not first replace the breaker box. In addition to the trial court's conclusion that there is no evidence that Al Jaafreh caused an interruption in Holmes's utility and that the causes of the interruption were the emergency and Al Jaafreh's bona fide repairs, the trial court also stated: "Any non-use of the electricity at all times subsequent to the electricity being restored is Ms. Holmes' fault for being unwilling to even allow inspection of the electrical box inside her home." The trial court entered take-nothing judgments in these two cases.

Applying the same standards of review as we did above, we hold that the evidence is legally sufficient to support the trial court's adverse findings and that the evidence does not establish conclusively that Holmes is entitled to recover on her claims. We also hold that the trial court's adverse findings are not against the great weight and preponderance of the evidence. We overrule issue two in No. 10-11-00151-CV and in No. 10-11-00152-CV and affirm the trial court's judgments in those cases.

## Landlord Retaliation

In No. 10-11-00313-CV, Holmes asserted a retaliation claim against Al Jaafreh.

Property Code section 92.331 provides:

> (a) A landlord may not retaliate against a tenant by taking an action described by Subsection (b) because the tenant:
> > (1) in good faith exercises or attempts to exercise against a landlord a right or remedy granted to the tenant by lease, municipal ordinance, or federal or state statute;
> > (2) gives a landlord a notice to repair or exercise a remedy under this chapter; or
> > (3) complains to a governmental entity responsible for enforcing building or housing codes, a public utility, or a civic or nonprofit agency, and the tenant:
> > > (A) claims a building or housing code violation or utility problem; and
> > > (B) believes in good faith that the complaint is valid and that the violation or problem occurred.
>
> (b) A landlord may not, within six months after the date of the tenant's action under Subsection (a), retaliate against the tenant by:
> > (1) filing an eviction proceeding, except for the grounds stated by Section 92.332;
> > (2) depriving the tenant of the use of the premises, except for reasons authorized by law;
> > (3) decreasing services to the tenant;
> > (4) increasing the tenant's rent or terminating the tenant's lease;  or
> > (5) engaging, in bad faith, in a course of conduct that materially interferes with the tenant's rights under the tenant's lease.

TEX. PROP. CODE ANN. § 92.331 (West 2007).

In her suit, which she filed on March 4, 2011, Holmes asserted that Al Jaafreh had filed an unsuccessful eviction proceeding against her in January 2011 and then pleaded the details of the above utility interruption and restoration suits, including the issues surrounding her allegedly dangerous breaker box.  Holmes sued for a civil penalty of one month's rent plus $500 and a six-months period during which Al Jaafreh could not

file an eviction proceeding. *See id.* § 92.331(b)(1); *id.* § 92.333 (West 2007). The justice court denied relief, and Holmes appealed to the county court, which held a trial de novo.

At trial, Holmes testified about Al Jaafreh's unsuccessful eviction suit in January 2011 and about Al Jaafreh's alleged interruption of Holmes's propane, water, and electric utilities, all of which are detailed above, beginning with Holmes's December 17, 2010 letter to Al Jaafreh that the propane gauge was at zero and needed refilling.

Next, Holmes focused on the January 21, 2011 letter from Al Jaafreh's attorney. Holmes received it on January 25, and it directed her to vacate the premises by March 10 unless she had executed a new lease. At that time, Holmes's lease with the original owner had expired, and her tenancy was month-to-month. The letter stated that Al Jaafreh would not be renewing Holmes's lease and demanded that Holmes vacate the mobile home by March 10 unless Holmes executed a new lease. The letter notified Holmes that she was in breach of the current lease by possessing nine dogs because her lease allowed only one dog. The letter also notified Holmes that she was in breach by not paying the utilities and requested that Holmes arrange the transfer of the utilities into Holmes's name (Al Jaafreh wanted Holmes to be directly responsible for the utilities in a new lease).

After Holmes rested, the trial court granted Al Jaafreh's motion for directed verdict on no-evidence grounds and entered a take-nothing judgment on Holmes's claim. Holmes asserts two issues on appeal: (1) the trial court failed to order a repleader when it was obvious that the evidence went beyond the pleadings; and (2)

there is legally and factually insufficient evidence to support the judgment.

In issue one, Holmes's entire argument is that the trial court abused its discretion "[b]y not ordering me to replead once I had realized that my pleadings didn't cover my whole complaint." She cites no legal authorities in support of her issue and argument. *See* TEX. R. APP. P. 38.1(h). Issue one is overruled as inadequately briefed. *See Strange v. Continental Cas. Co.,* 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied).

On issue two, we apply the same standards of review as we did above. Holmes's central argument is that, after Al Jaafreh's unsuccessful eviction suit in January 2011, Al Jaafreh retaliated by interrupting Holmes's utilities. But, based on our holdings in the above seven utility interruption and restoration cases, Al Jaafreh did not cause the interruptions in Holmes's utilities. Moreover, Al Jaafreh's January 21 letter, which directed Holmes to vacate the premises by March 10 unless she executed a new lease, cannot constitute retaliation because Holmes's retaliation suit was filed after the January 21 letter. *See* TEX. PROP. CODE ANN. § 92.332(b)(5) (West 2007) (providing that an eviction or lease termination does not constitute retaliation if "the tenant holds over after the landlord gives notice of termination at the end of the rental term and the tenant does not take action under Section 92.331 until after the landlord gives notice of termination").

We thus hold that the evidence is legally sufficient to support the trial court's adverse finding on Holmes's retaliation claim and that the evidence does not establish conclusively that Holmes is entitled to recover on her claim. We also hold that the trial court's adverse finding is not against the great weight and preponderance of the

evidence. We overrule issue two in No. 10-11-00313-CV and affirm the trial court's judgment in that case.

## Conclusion

In conclusion, having overruled all of Holmes's issues in these eight cases, we affirm the trial court's judgments in Nos. 10-11-00148-CV, 10-11-00149-CV, 10-11-00150-CV, 10-11-00151-CV, 10-11-00152-CV, 10-11-00153-CV, 10-11-00154-CV, and 10-11-00313-CV.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed May 30, 2013
[CV06]